SALLY A. SHEA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shea v. Commissioner
Docket No. 12165-82.
United States Tax Court
T.C. Memo 1984-310; 1984 Tax Ct. Memo LEXIS 359; 48 T.C.M. (CCH) 304; T.C.M. (RIA) 84310; June 20, 1984. William F. Snyder,Richard A. Lesco, and Glenn Waggoner, for the petitioner. Karen J. Goheen, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined the following deficiencies in *360 and additions to petitioner's Federal income taxes: Addition under
Year
Deficiency
Section 6653(a) [1]
1976
$30,046.17
$1,502.31
1977
5,729.50
286.48
After concessions by both parties, the issues remaining for decision are: (1) Whether petitioner and her husband omitted items of gross income from their joint Federal income tax returns for 1976 and 1977; (2) Whether petitioner is liable for additions to tax for negligence; (3) Whether petitioner is relieved from liability under the "innocent spouse" provision of section 6013(e); and (4) in the event that issue (3) is determined adversely to petitioner, whether petitioner is relieved from liability for taxable year 1977 only by reason of not having signed the return filed for that year. Some of the facts have been stipulated and are found accordingly.The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Aurora, *361 Ohio, when she filed her petition in this case. Petitioner married Kenneth J. Shea ("Shea") in 1952, and she remained married to him until his death on December 8, 1978. Throughout their 26 years of marriage, petitioner and Shea filed joint Federal income tax returns. Their returns for taxable years 1976 and 1977 were filed with the Internal Revenue Service Center at Cincinnati, Ohio. The 1976 return was signed by both petitioner and Shea. However, the 1977 return was signed by neither petitioner nor Shea. It was signed only by their preparer and attorney, James S. Hogle ("Hogle"). No power of attorney authorizing Hogle's signature is attached to the return, and petitioner was unaware that Hogle had signed it. Rather, she believed Shea's statement that Shea himself had signed both petitioner's name and his own to the return. Petitioner filed no other return, either separately or jointly, for taxable year 1977. Following Shea's death during 1978, petitioner filed a joint return for that year during 1979. Shea was a manufacturer's representative who operated as a sole proprietor prior to July 8, 1976. On that date, Shea Sales Company, Inc. ("Shea Sales") was incorporated, *362 and Shea continued to operate his business in corporate form. Shea ran his business from his home. He controlled Shea Sales during the taxable years in issue. Business required Shea to travel and also to entertain extensively while in town. Shea suffered from a drinking problem which worsened during 1977 and which was related to his physical and mental decline and to his eventual death from cirrhosis of the liver. Petitioner was a shareholder of Shea Sales and held the office of secretary-treasurer. She was not actively involved in the business, but served as secretary-treasurer to enable Shea Sales to have the requisite number of officers for incorporation. In addition, petitioner performed various support functions, such as answering the telephone and making bank deposits. Shea Sales maintained a checking account, the checks for which were imprinted with the names "Kenneth and Sally Shea." Petitioner was authorized to write checks on the corporate account. She did so at the instruction of Shea and without specific knowledge of the purpose for each check. Regular bank statements for this checking account were sent to the home of Shea and petitioner. However, petitioner *363 did not examine the statements, as this task was performed by Shea. During 1976, Shea Sales issued checks drawn to Shea totalling $11,911.27, to petitioner totalling $3,000.00, and to cash totalling $7,590.00. During 1977, Shea Sales issued checks drawn to Shea totalling $22,689.00, to petitioner totalling $5,150.00, and to cash totalling $1,670.00. In addition, Shea Sales issued various checks to assorted payees for the payment of personal expenses of petitioner and Shea. Such checks totalled $23,880.93 during 1976 and $34,927.58 during 1977. The payees included a department store, a restaurant and cocktail lounge, a gasoline service station, a television repair service, and a swimming pool concern. At trial, petitioner suggested possible business purposes for some checks, but offered no substantiation of expenses beyond her own speculation. For other checks, petitioner herself admitted there was no business purpose. [2] For many other checks, drawn either to cash or to other payees, petitioner was unable to offer any explanation of purpose. *364 In addition to the corporate account, petitioner maintained a personal checking account in the name "Sally A. Shea." Deposits to this account totalled $94,622.99 in 1976 and $47,032.62 in 1977. Regular bank statements for this account were sent to petitioner's home. However, petitioner did not examine the statements of her personal account. As was the practice regarding the corporate account, Shea examined the statements of petitioner's personal account. Shea himself did not maintain a personal bank account during the years in issue. When he needed to write a check, he used petitioner's account. He did so despite the facts that only petitioner's name was imprinted on her checks and only petitioner's signature was authorized on the account. Shea signed petitioner's name to her checks and kept records in check registers separate from those used by petitioner. Petitioner was not aware of the existence of the separate registers until after Shea's death. [3] She did not approve of Shea's use of her personal checking account. However, she was aware of his practice of using her checks and signing her name. The bank had telephoned petitioner to complain of Shea's use, and petitioner *365 had discussed the problem with him. Shea intended to fill out an additional signature card and convert the account to a joint account, but he never did so.
In his notice of deficiency, respondent asserted deficiencies in income tax arising from unreported items of gross income. These items consist of amounts paid during 1976 by manufacturers represented by Shea [4] and of amounts received during both 1976 and 1977 in the form of checks issued by Shea Sales payable to petitioner, Shea, or cash, or to pay personal expenses of petitioner and Shea. It is well settled that such items are includable in gross income. See sec. 61. *366 Respondent's determination of deficiencies is presumptively correct, and petitioner bears the burden of proving error. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioner has offered only her unsubstantiated recollections or theories of business purposes for certain checks. For the vast majority of expenditures, she has offered no explanation but rather has asserted her ignorance of the details of Shea's business. We believe petitioner and are impressed by her earnest attempts to unravel the mysteries of her deceased husband's affairs. However, her efforts are not sufficient to rebut the determination of deficiencies by respondent. Similarly, petitioner bears the burden of proving that respondent's determination of additions to tax is erroneous. Rule 142(a). Petitioner herein has offered no evidence to suggest that the omission of gross income items was other than "* * * due to negligence or intentional disregard of rules or regulations * * *." Sec. 6653(a). *367 To the contrary, the record supports respondent's determination that the additions are warranted. There is no question presented of any valid uncertainty as to the includability of the income items. Nor is any explanation offered to excuse their omission. Petitioner appears confused as to the requirements for liability under sections 6653(a) and 6013. On brief, she asserts that she cannot be negligent where she "had nothing to do with the preparation of the return." Such argument ignores the legal significance of the filing of a joint return. Where a joint return is filed, section 6013(d)(3) provides that liability shall be joint and several. The rule extends not only to the tax itself, but also to any additions to tax. See sec. 6659(a)(2). [5] Thus, a lack of personal negligence on the part of petitioner [6] would not relieve her of liability for deficiencies due to negligence on the part of Shea. Liability for the actions of a spouse is the price one pays for the benefits afforded by an election to file jointly. *368 In certain cases, however, the "innocent spouse" provision of section 6013(e)(1) permits a spouse to be relieved of liability. It provides: (1) In General. Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for *369 such taxable year to the extent that such liability is attributable to such omission from gross income. The requirements of section 6013(e)(1) are concurrent, not alternative. Therefore, a failure to meet any of the requirements precludes entitlement to relief. Each requirement is examined below: Section 6013(e)(1)(A): For purposes of analysis under this section, we assume respondent is correct that joint returns were filed for both taxable years in issue. [7] Our above findings as to the deficiencies fulfill the additional requirements that properly includable income items were omitted from the returns and that these items were properly attributable to Shea, whose business activities generated all items of gross income. Neither party has challenged the mathematical fact that the omitted items exceeded 25 percent of the stated amounts of income for each taxable year. Thus, all requirements of section 6013(e)(1)(A) are satisfied. *370 Section 6013(e)(1)(B):Petitioner is not entitled to innocent spouse relief if she knew, or had reason to know, of the omission. In the instant case, we recognize that petitioner was an officer of Shea Sales, that she had check-writing authority, and that she both drew and received checks on the corporate bank account. We further note that she had access to both corporate and personal financial records, including her own checking account statements, had she chosen to look at them. However, we believe petitioner's testimony that she did not examine records, that her position as secretary-treasurer was nominal, and that her check-writing functions were ministerial and at the direction of her husband. Under these circumstances, we find that petitioner did not have actual knowledge of any omissions of gross income. Lack of knowledge does not ensure qualification under section 6013(e)(1)(B), however, and the dispositive question becomes whether petitioner had reason to know of omissions. This *371 subjective determination does not require that there was no possibility of discovery of omissions. See Sanders v. United States,509 F.2d 162 (5th Cir. 1975). On the other hand, a taxpayer cannot close her eyes to evidence of omissions and then claim protection due to lack of knowledge. See Terzian v. Commissioner,72 T.C. 1164, 1170 (1979); Mysse v. Commissioner,57 T.C. 680, 699 (1972). The standard to be applied in determining whether a taxpayer had reason to know of omissions is whether a reasonable person under the circumstances of the taxpayer at the time of signing the return could be expected to know of the omissions. Terzian v. Commissioner,supra;Sanders v. United States,supra.
In the instant case, petitioner's circumstances included the following: she had relevant financial records available to her; she was aware that Shea was making unauthorized use of her personal checking account, having been notified of the practice by her bank and having discussed the matter with Shea; she knew of her husband's drinking problem and deteriorating condition during the years in issue *372 and had reason to suspect his inability to properly handle financial matters; and she was at least marginally involved in Shea's business and familiar with his expense payment procedures. Under these circumstances, we believe a prudent taxpayer would at least have inquired into her personal financial and tax situation, thereby discovering the omissions. Only minimal effort would have been required by petitioner to open her bank statements and reconcile her checking account, to secure her personal checks in a location not accessible to Shea, to question the purposes for which she was told to issue or receive checks on the account of Shea Sales, or to contact her attorney to request information as to the filing of her annual tax returns. Petitioner made no such efforts, however. Furthermore, petitioner was an officer of Shea Sales. In that capacity, she was authorized to and did draw checks on the corporate bank account. She also made bank deposits, answered the telephone, and performed other routine tasks. Participation in a spouse's business affairs has commonly been held to negate an *373 innocent spouse claim. See, e.g., Quinn v. Commissioner,62 T.C. 223 (1974), affd. 524 F.2d 617 (7th Cir. 1975); Sonnenborn v. Commissioner,57 T.C. 373 (1971). Under these circumstances, petitioner's failure to know of omissions on her tax return resulted from her own failure of prudence. We conclude that petitioner had reason to know of the omissions and opportunity to easily discover them. Therefore, she is not entitled to relief of liability under section 6013(e)(1)(B). Section 6013(e)(1)(C):Qualification under section 6013(e)(1) requires adherence to the requirements of all three of its subsections. Therefore, because petitioner has failed to demonstrate entitlement under section 6013(e)(1)(B), she is ineligible for relief and the possible application of section 6013(e)(1)(C) is irrelevant. See Estate of Jackson v. Commissioner,72 T.C. 356, 362 (1979). Even if this were not the case, petitioner would not qualify under section 6013(e)(1)(C). *374 Among the requirements of section 6013(e)(1)(C) is that petitioner did not benefit, directly or indirectly, from the omitted income. In the instant case, petitioner did benefit from omitted items in that unreported income was available to and used by her. Checks on the account of Shea Sales were drawn to cash, to petitioner directly, or to pay personal expenses of both petitioner and Shea. In addition, income received by Shea was comingled with other funds in petitioner's personal checking account, was available to petitioner, and was used by her without any separate accounting to distinguish it from other money. For the reasons discussed above, we conclude that petitioner is not relieved of liability under section 6013(e)(1). She has failed to meet the requirements of both section 6013(e)(1)(B) and section 6013(e)(1)(C), either of which is sufficient to preclude entitlement to innocent spouse relief. In the alternative, petitioner asserts that she is not liable for any deficiency or addition for taxable year 1977 by reason of not having signed the return filed for that year. It *375 is generally true that a joint return must be signed by both spouses. Sec. 1.6013-1(a)(2), Income Tax Regs. The absence of one or both signatures, however, is not necessarily fatal to a finding of joint return status. See, e.g., Estate of Campbell v. Commissioner,56 T.C. 1 (1971). [8] Rather, the intent of the spouses in filing the unsigned return is determinative. Estate of Campbell v. Commissioner,supra at 12-13. In evaluating intent, factors to be considered include: whether the non-signing spouse filed a separate return, see, e.g., Howell v. Commissioner,10 T.C. 859, 866 (1948), affd. per curiam, 175 F.2d 240 (6th Cir. 1949); whether the non-signing spouse objected to the joint filing, see, e.g., Heim v. Commissioner,27 T.C. 270, 274 (1956), affd. 251 F.2d 44 (8th Cir. 1958); and whether prior filing history indicates an intention to file jointly, see, e.g., Estate of Campbell v. Commissioner,supra at 12-13. [9]
*376 In the instant case, petitioner filed no separate return, raised no objection to the joint filing, and had elected to file jointly throughout her 26 years of marriage, including the 1978 return due and filed at petitioner's own volition after Shea's death. Petitioner established a pattern of delegating to Shea all responsibility for return preparation and filing. By her own admission, whe believed Shea had attended to the preparation of the 1977 joint return and had signed both of their names thereto. She raised no objection to this supposed circumstance and took no steps to alter it. Under these facts, we find that petitioner intended the 1977 return to be a joint return as filed, without her own signature. Her subsequent discovery that only Hogle, and not Shea, had signed the return does not defeat this clear intention. Therefore, petitioner's liability is not affected by the absence of her signature on the 1977 return. We have considered petitioner's other arguments and find them unpersuasive. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. For example, the transcript of trial at pp. 44-45 includes the following exchange between petitioner and her own attorney: Q. * * * Now there are two checks to Kayak Pools, checks 332 and 342. Do you know anything about those expenditures? A. He bought an above-ground pool that year when I was out at my mother's. Q. He being Ken [Shea]? A. Yes. Q. That was a personal type of expense to your knowledge? A. Yes.↩
3. Shea did not attempt to conceal the registers from petitioner, however. On at least one occassion, petitioner inadvertently made her own entry in a register maintained by Shea while writing a check at his instruction. Shea provided the register to petitioner for the purpose of entry.↩
4. Payments from manufacturers correspondingly affect the tax liability of Shea Sales. In a stipulated decision entered on January 18, 1983, in Docket No. 12166-82, a deficiency in the amount of $6,285.00 was found in the income tax of Shea Sales for the taxable year ended December 31, 1976.↩
5. Sec. 6659(a)(2)↩, as effective during the taxable years in issue, now appears as sec. 6662(a)(2). 6. We do not suggest that nonparticipation in return preparation and failure to review a return prepared by another are not themselves indicative of negligence. Our postulation of a lack of personal negligence is solely for purposes of responding to petitioner's argument.↩
7. It is uncontested that a joint return was filed for 1976. Petitioner's alternative argument, discussed later in this opinion, asserts that no joint return was filed for 1977. If this were so, petitioner would not be entitled to innocent spouse relief for 1977. The failure to qualify as an innocent spouse would be irrelevant, however, if petitioner succeeded in disassociating herself from the 1977 joint return. If there were no liability, there would be no need for relief of liability. Thus, the issue of joint return status is moot for purposes of sec. 6013(e)(1)(A)↩ unless we assume that joint returns were filed for both of the taxable years in issue.
8. See also Riportella v. Commissioner,T.C. Memo. 1981-463↩. 9. See also Riportella v. Commissioner,supra;Klayman v. Commissioner,T.C. Memo. 1979-408; Parker v. Commissioner,T.C. Memo. 1978-23↩.